# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JONATHON RUTE, | |
| Plaintiff, | CIVIL ACTION No. 4:22CV168 |
| | JUDGE AMOS L. MAZZANT |
| v. | |
| U.S. DEPT. OF JUSTICE, et al, | |
| Defendants. | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, the United States Department of Justice (DOJ) [1] and the Federal Bureau of Investigation (FBI), move for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7. The reasons for this motion are set forth in the incorporated briefing, as well as the attached declarations of Auborn Finney (EOUSA), Traci McCoy (CRM), and Michael G. Seidel (FBI).

## INTRODUCTION

Plaintiff Jonathon Rute filed this lawsuit pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq,* based on a single request submitted to the Defendants on May 11, 2021, seeking records of investigations of various third parties,

---

[1] The DOJ components in this case include the Criminal Division (CRM) and the Executive Office of United States Attorneys (EOUSA).

including public officials and attorneys, in Collin County, Texas. Defendants are entitled to summary judgment because (1) Plaintiff failed to properly exhaust his requests to EOUSA and the Criminal Division; (2) portions of his request are not proper under FOIA because they do not reasonably describe the records sought and would require an unduly burdensome search; and (3) the FBI properly issued a privacy *Glomar* response to Plaintiff's request for law enforcement records regarding third parties. This case presents no novel or difficult questions of law. Because Defendants have satisfied their obligations under FOIA, the Court should grant summary judgment in Defendants' favor.

## BACKGROUND

### I.  PLAINTIFF'S FOIA REQUEST

On May 11, 2021, Plaintiff submitted a FOIA request to the FBI and two DOJ components: EOUSA and the Criminal Division. Plaintiff sought the following:

(1) For the period from January 1, 2010 until the present, all documents, records or communications arising from or pertaining to any public integrity investigations of former Collin County District Attorney John Roach, Sr., District Judge John Roach, Jr., District Judge Cynthia Wheless, and/or former District Judge Ray Wheless.

(2) For the period from January 1, 2014 until the present, all documents, records, or communications arising from or pertaining to any public integrity investigations of any other Collin County elected officials (e.g., county commissioner, district judge, etc.).

(3) For the period from January 1, 2014 until the present, all documents, records or communications arising from or pertaining to any investigations of attorneys or law firms for engaging or attempting to engage in any illegal activities with judges in Collin

County (e.g. attempting to bribe a judge or steer kickbacks to a judge).

(4) For the period from January 1, 2014 until the present, all documents, records or communications arising from or pertaining to federal investigations of attorneys Jonathan D. "Jack" Stick and Jess C. "Rick" Rickman, as well as any attorneys affiliated with Hallett and Perrin, P.C.

[ECF 1].

## II.  PROCEDURAL HISTORY BY AGENCY

A. <u>EOUSA</u>

EOUSA received Plaintiff's FOIA request (designated EOUSA-2021-002190) on May 11, 2021. [Finney Declaration ¶¶5-6]. On May 25, 2021, EOUSA advised Plaintiff that his request for records concerning a third party could not be released except with the party's express authorization and consent, or a clear demonstration those individuals' privacy interests would be outweighed by a significant public benefit. [Finney Declaration ¶7 & Attachment A].

Additionally, Plaintiff was advised in the letter that if he was not satisfied with the response to his request, he had ninety (90) days from the date of the response to file an administrative appeal with the Office of Information Policy ("OIP") and was provided with instructions on how to submit an appeal to OIP. [Finney Declaration, Attachment A].  Plaintiff did not appeal EOUSA's final decision.  [Finney Declaration ¶8].

B.  Criminal Division

The Criminal Division received Plaintiff's FOIA request on May 11, 2021.
[McCoy Declaration ¶6 & Attachment A]. On June 4, 2021, the Criminal Division
acknowledged receipt of Plaintiff's FOIA request and informed Plaintiff that the request
would be divided into two request files for further handling. Specifically, Plaintiff was
notified that Items 1, 2 and 4 were assigned file number CRM-301649383. [McCoy
Declaration ¶7 & Attachment B]. Additionally, Plaintiff was notified that Item 3 was
assigned file number CRM-301652938. [McCoy Declaration ¶7 & Attachment C].

1.  *CRM-301649383 (Items 1, 2 & 4)*

On June 4, 2021, the Criminal Division issued a final response to Plaintiff
concerning Items 1, 2 and 4 of Plaintiffs request, which specifically sought records
related to John Roach, Sr., John Roach, Jr., Cynthia Wheless, Ray Wheless, Jonathan D.
"Jack" Stick, Jess C. "Rick" Rickman, and any attorneys affiliated with Hallett and
Perrin, P.C. and any Collin County elected officials. [McCoy Declaration ¶9 &
Attachment B].

In its letter, the Criminal Division informed Plaintiff of its decision to neither
confirm nor deny the existence of responsive records pursuant to FOIA Exemptions 6 and
7(C). The Criminal Division noted that to acknowledge the existence of law enforcement
records on another individual could reasonably be expected to constitute an unwarranted
invasion of personal privacy. [McCoy Declaration ¶10 & Attachment B].

Additionally, Plaintiff was advised in the letter that if he was not satisfied with the response to his request, he had ninety (90) days from the date of the response to file an administrative appeal with the Office of Information Policy ("OIP") and was provided with instructions on how to submit an appeal to OIP.  [McCoy Declaration ¶11 & Attachment B]. Plaintiff did not appeal the Criminal Division's final decision. [McCoy Declaration ¶¶12-13].

### 2.  CRM-301652938 (Item 3)

On June 4, 2021, the Criminal Division issued an unperfected letter to Plaintiff concerning Item 3 of Plaintiff's request specifically seeking "all documents, records or communications arising from or pertaining to any investigations of attorneys or law firms for engaging or attempting to engage in any illegal activities with judges in Collin County (e.g., county commissioner, district judge, etc.) for the period from January 1, 2014 until present."  [McCoy Declaration ¶14 & Attachment C].

In its letter, the Criminal Division informed Plaintiff that a proper FOIA request must be made in accordance with Department regulations, must reasonably describe the records sought and must be described in sufficient detail in order to enable the Criminal Division personnel to locate the records with a reasonable amount of effort. The letter also requested that Plaintiff provide additional information, including a specific description of the subject of the request, investigation, or prosecution. [McCoy Declaration ¶15 & Attachment C].

Finally, the Criminal Division notified Plaintiff that if it had not received additional information needed to perfect Plaintiff's request within thirty (30) days, the request would be administratively closed. [McCoy Declaration ¶16 & Attachment C].

Plaintiff did not respond to the letter or submit any additional information to the Criminal Division within the 30 days allotted. On July 16, 2021, Plaintiff's request No. CRM-301652938 was administratively closed. [McCoy Declaration ¶¶17-18].

C. FBI

The FBI received Plaintiff's FOIA request on May 11, 2021. [Seidel Declaration ¶5]. By letter dated May 19, 2021, the FBI acknowledged receipt of the request and notified Plaintiff it was assigned FBI FOIPA Request Number 1496817-000. [Seidel Declaration ¶6 & Attachment B].

The FBI informed Plaintiff he requested information on one or more third party individuals and the FBI would neither confirm nor deny the existence of such records pursuant to the FOIA Exemptions 6 and 7(C), 5 U.S.C. 552(b)(6) and (b)(7)(C). [Seidel Declaration ¶6 & Attachment B].

On June 3, 2021, Plaintiff filed an appeal to the FBI's decision via OIP's online portal. [Seidel Declaration ¶7 & Attachment C].

By letter dated June 3, 2021, OIP acknowledged receipt of Plaintiff's appeal and informed Plaintiff OIP assigned appeal number A-2021-01891 to his appeal. OIP advised Plaintiff that OIP would notify Plaintiff of the decision on his appeal as soon as possible. [Seidel Declaration ¶8 & Attachment D].

By letter dated September 16, 2021, OIP informed Plaintiff that it had affirmed the

FBI's actions. [Seidel Declaration ¶9 & Attachment E].

## STATEMENT OF THE ISSUES

The issues addressed in this brief are as follows:

1.  Whether Plaintiff failed to properly exhaust administrative remedies by failing to appeal EOUSA and the Criminal Division's final decisions;

2.  Whether portions of Plaintiff's request were properly denied as improper; and

3.  Whether the FBI properly issued a privacy *Glomar* response to Plaintiff's request for law enforcement records concerning third parties.

## STATEMENT OF LAW

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R.

Civ. P. 56(a); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  FOIA actions are

typically resolved on summary judgment, *see Reliant Energy Power Generation, Inc. v.

FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007), and the Court conducts a *de novo* review

of the agency's response to any challenged FOIA requests, *see* 5 U.S.C. § 552 (a)(4)(B).

When a requester challenges the adequacy of an agency's search, "[i]n order to obtain

summary judgment, the agency must show that it made a good faith effort to conduct a

search for the requested records, using methods which can be reasonably expected to

produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68

(D.C. Cir. 1990); *see Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).The agency must also justify any records withheld (in whole or in part) subject to FOIA's statutory exemptions.  Congress recognized "that legitimate governmental and private interests  could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  "Summary  judgment is warranted on the basis of agency affidavits when the affidavits describe the  justifications for nondisclosure with reasonably specific detail, demonstrate that the information  withheld logically falls within the claimed exemption, and are not controverted by either contrary  evidence in the record nor by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565F.3d 857, 865 (D.C. Cir. 2009) (quotation omitted).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473F.3d 370, 374-75 (D.C. Cir. 2007) (citing *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982); *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

## ARGUMENT & AUTHORITIES

### I.    FAILURE TO EXHAUST

The FOIA grants federal courts jurisdiction to enjoin an agency from withholding agency records and to order production of any agency records improperly withheld from the plaintiff. 5 U.S.C.A §552(a)(4)(B). It is well-settled that although FOIA does not expressly mandate that a claimant must exhaust his administrative remedies, the Fifth Circuit requires that a claimant exhaust his administrative remedies before seeking

judicial review. *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir.1979) ("FOIA should be read to require that a party must present proof of exhaustion of administrative remedies prior to seeking judicial review."); *Voinche v. U.S. Dep't of Air Force*, 983 F.2d 667, 669 (5th Cir.1993) (FOIA implicitly requires exhaustion of administrative remedies before seeking judicial review). The exhaustion of administrative remedies serves to protect administrative agency authority and promote judicial efficiency. *See Aguirre v. U.S. Nuclear Regulatory Comm'n*, 11 F.4th 719, 725 (9th Cir. 2021). Allowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors. *Taylor v. Appleton*, 30 F.3d 1365, 1369 (11th Cir. 1994). "Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision…The exhaustion requirement also allows top managers of an agency to correct mistakes made at lower levels and thereby obviates the unnecessary judicial review." *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 61 (D.C.Cir.1990). To properly exhaust administrative remedies, a FOIA requester must file a proper request with the appropriate agency and appeal any adverse decisions administratively. *Oglesby*, 920 F.2d at 61.

EOUSA issued a final response to Plaintiff's request with instructions for appeal, but Plaintiff failed to appeal. [Finney Declaration ¶8 &Attachment A]. Similarly, the Criminal Division issued a final response to Items 1, 2 & 4 of Plaintiff's request with

instructions for appeal, but Plaintiff failed to appeal. [McCoy Declaration ¶¶11-13 & Attachment B]. Both claims should be dismissed for failure to exhaust administrative remedies.

## II.    IMPROPER REQUESTS

The FOIA specifies two requirements for a FOIA request to be valid: it must "reasonably describe []" the records sought, and it must be made in accordance with the agency's published FOIA regulations. 5 U.S.C. § 552(a)(3)(A). A reasonably described request must enable the agency to locate the record with "reasonable efforts." 5 U.S.C. § 552(a)(3)(C).  Courts have found that, "it is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (quoting *Assassination Archives and Research Ctr. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989) (internal citations omitted)).

An agency is not required to respond to a request that is "so broad as to impose an unreasonable burden upon the agency,' such as one which 'require[s] the agency to locate, review, redact, and arrange for inspection a vast quantity of material.'" *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 282, 290-91 (D. Conn. 2012), *aff'd*, 570 F.App'x 54, 57 (2d Cir. 2014) (quoting *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990)).

A.    FBI: Items 2 & 3

In Plaintiff's request, the FBI determined that Items 2 and 3 were not proper requests under FOIA and therefore the FBI, via RIDS, determined it was not obligated to search for records responsive to items 2 and 3 of Plaintiff's FOIA request because they do not comply with the FOIA and its regulations. [Seidel Declaration ¶¶ 20-30].

1.  *Records Sought Must Be Reasonably Described*

Request item 2 seeks all documents, records, or communications pertaining to public integrity investigations of Collin County elected officials over a seven (7) year period. Request item 2 also asks for information on all elected officials in Collin County, Texas over a seven (7) year period. Request item 3 seeks information on "…any investigations of attorneys or law firms for engaging or attempting to engage in any illegal activities with judges..." [Seidel Declaration ¶ 22].

The FBI stores its records in the Central Records System ("CRS"), which spans the entire FBI organization and encompasses the records of FBI Headquarters ("FBIHQ"), FBI Field Offices, and FBI Legal Attache Offices ("Legats") worldwide.[2] The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories. The broad array of CRS file classification categories include types of criminal conduct and investigations conducted

---

[2] The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions.

by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number ("UCFN") consisting of three sequential components: (a) the CRS file classification number, (b) the abbreviation of the FBI Office of Origin ("OO") initiating the file, and (c) the assigned individual case file number for that particular subject matter.[3] Additionally, FBI employees may index information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (e.g., a terrorist attack or bank robbery). Indexing information in the CRS is done at the discretion of FBI investigators when information is deemed significant enough to warrant indexing for future retrieval. [Seidel Declaration ¶ 23].

The structure of the CRS, as discussed *supra*, is not conducive to searching for broad categories of records such as "public integrity" records at large. First, records are not indexed by this general type of subject matter, but rather according to specific individuals, incidents, or organizations. Second, although records are categorized by CRS file classification number, the FBI does not maintain one specific file classification that would encompass all "public integrity" matters that it has investigated. Accordingly, because it is the requester's responsibility to frame requests with sufficient particularity

---

[3] For example, in a fictitious file number of "11Z-HQ-56789;" the "11Z" component indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO of the file, and "56789"is the assigned case specific file number.

to ensure that searches are not unreasonably burdensome, the FBI determined items 2 and 3 of Plaintiff's request are not proper FOIA requests because they are not reasonably described in a manner that would allow an employee of the agency to locate the records with a reasonable amount of effort. [Seidel Declaration ¶ 24].

### 2. *Agencies Are Not Required to Conduct Unduly Burdensome Searches or Conduct Research*

As a corollary to the "reasonably described" requirement, courts have held that agencies are not required to conduct wide-ranging, unduly burdensome searches or research projects, answer questions, or draw conclusions concerning queried data if the request lacks specificity or is too vague.[4]  As explained below, in order to conduct a search for records responsive to items 2 and 3 of Plaintiff's request, the FBI would be required to conduct wide-ranging, unduly burdensome searches and conduct research and draw conclusions, due to Plaintiff's lack of specificity and vagueness. [Seidel Declaration ¶ 25].

The FBI typically extracts search terms from the four corners of the request, based on information provided by the requester and as a result of employee's knowledge of the

---

[4] See, e.g., *Nation Mag. v. U.S. Customs Serv.,* 71 F.3d 885, 892 (D.C. Cir. 1995) (agreeing that search requiring review of twenty-three years of unindexed files would be unreasonably burdensome, but disagreeing that search through chronologically indexed agency files for dated memorandum would be burdensome); *AFGE v. Dep't of Com.,* 907 F.2d 203, 209 (D.C. Cir. 1990) (holding that "while [plaintiff's requests] might identify the documents requested with sufficient precision to enable the agency to identify them . . . it is clear that these requests are so broad as to impose an unreasonable burden upon the agency," because agency would have "to locate, review, redact, and arrange for [the] inspection [of] a vast quantity of material");

CRS and its layout.  Here, the term pulled from the request, "public integrity investigations" is a broad category of information and lacks specific descriptors that would allow the FBI to conduct a reasonable search for records. Ideally, to correct this deficiency for item two, Plaintiff would need to provide names and identifying information of the individuals and a list of offices that are elected in Collin County. With this information, the FBI might be able to conduct a reasonable search of the CRS by using the names as search terms and using the relevant time frame and offices to further scope the records located by the individual's name.[5] The term "public integrity investigations" does not identify a clear subset of FBI investigative files to initiate a search, nor does Plaintiff further define that term. Furthermore, the FBI does not compile investigative records under a generic "public integrity" file classification. [Seidel Declaration ¶ 26].

To further illustrate the daunting task involved in such a search, RIDS conducted a cursory search of the CRS utilizing the term "public integrity." First, the volume of resulting potential hits encountered was unreasonably large at more than 800,000 hits. Second, RIDS would have to conduct additional review of each of the 800,000 hits to verify which, if any, are responsive. To determine responsiveness, RIDS would need to check each hit against the time frame specified by the Plaintiff's request, and then further

---

[5] Privacy waivers, proof of death, or information showing that a significant public interest exists that would outweigh the individual's privacy interest, would be required before such a search would be conducted.

review each of the records located in order to create a list of names of any individuals that reside in Collin County, Texas. Once this subset of records was developed, RIDS would need to further review and analyze each of these records to determine how many of the records of these individuals within the relevant time frame are connected to an FBI investigation of "public integrity." At a very conservative estimate of five (5) minutes per hit, the search for records responsive to Plaintiff's request would take approximately 67,000 hours. Accordingly, the FBI determined Plaintiff's request is not framed in a manner which allows FBI personnel to locate responsive records with a reasonable amount of effort.[6] [Seidel Declaration ¶ 27].

Request item 2 also asks for information on all elected officials in Collin County, Texas over a seven (7) year period. In order to conduct a reasonable search for item two, Plaintiff's request would have needed to include a list of names of individuals that have served in elected positions in Collin County, Texas.[7] As written, Plaintiff's request is overly broad and vague, and would require the FBI to conduct further research to first determine what the search terms (names) might be. First, the FBI would need to locate a list of those positions that are filled by election in Collin County, Texas. Second, the FBI

---

[6] Further, even if Plaintiff provided the FBI with the names of the third parties, he has not provided any privacy waivers authorizing release of their information. These third parties would have privacy interests similar to those described above for items one and four of the request, and Plaintiff has provided no public interest that would outweigh their privacy interests; therefore, that request would be denied as well pursuant to a Privacy *Glomar*.

[7] A reasonable search could be conducted using the names of these individuals, including identifying information such as date of birth, and other personal identifiers.

would need to conduct in-depth research to determine all individuals who held those positions over the seven (7) year period specified by Plaintiff, either by election or in an "acting as" capacity.[8] Only then could the FBI structure a reasonable search. Plaintiff's request is drafted without specific descriptors. As a result, the FBI cannot conduct a search with a reasonable amount of effort. Developing search parameters would require a significant amount of time and resources, without any factual basis to conclude that such herculean efforts would locate any responsive records. [Seidel Declaration ¶ 28].

Request item 3 seeks information on "…any investigations of attorneys or law firms for engaging or attempting to engage in any illegal activities with judges..." Again, the nature of this request is vague because it seeks general information of all attorneys, all law firms, any legal activity, and any judge involved in illegal activity. Plaintiff makes no reference to an existing local investigation or any official public acknowledgment of the FBI's involvement in any such investigation. As with item 2, item 3 of Plaintiff's request would require the FBI to conduct additional research to determine and create a list of names of individuals who may be responsive to this request. Essentially, that list would need to cover every law firm, not only in Collin County, but every law firm that has conducted business in Collin County in the 7 years indicated in Plaintiff's request, as well as the name of every lawyer and judge within Collin County, before the FBI could begin a search. Compilation of such a list would require a significant and unreasonable number

---

[8] This type of research would require accessing public sources outside of FBI records systems.

of hours for FBI employees to examine public and court records, simply to generate terms that could be searched within the CRS.[9] Plaintiff's request lacks specificity and detail that would allow the FBI to conduct a reasonable search, or a factual basis that responsive records may exist. [Seidel Declaration ¶ 29].

Given that Plaintiff's request items two and three are not described in a manner that would allow an agency employee to locate potentially responsive records with a reasonable amount of effort, the FBI determined Plaintiff's request items two and three were not proper FOIA requests; therefore, the FBI denied those parts of Plaintiff's request. [Seidel Declaration ¶ 30].

A. <u>The Criminal Division Item 3</u>

Similarly, the Criminal Division determined that Item 3 did not reasonably describe the records sought and issued an unperfected letter to Plaintiff detailing the deficiency. [McCoy Declaration ¶¶14-18]. The Criminal Division requested that Plaintiff provide additional information in support of Item 3, including a specific description of the subject of the request, investigation, or prosecution. [Id. at ¶15]. Plaintiff failed to

---

[9] Even if Plaintiff were to provide a list of names (or even if the FBI were to conduct the unduly burdensome research to create such a list), Plaintiff has not submitted a privacy waiver from any third party or proof of death of any third party as described in the regulation at 28 C.F.R. § 16.3(a). Plaintiff has not demonstrated a significant public interest in disclosure of the material sought. Therefore, even if the research was conducted and names compiled that could be searched, the FBI would assert a Privacy *Glomar*, pursuant to Exemptions 6 and 7(C) because it can neither confirm nor deny the existence, or non-existence, of such records as described in ¶¶ 15-19, *supra*.

respond to the letter or submit any additional information, so the request was administratively closed.[10]

### III.    THE FBI'S *GLOMAR* RESPONSE[11]

A. Exemption 7 Threshhold

Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. [Seidel Declaration ¶ 11]

---

[10] Plaintiff's failure to provide additional requested information can also constitute a failure to exhaust administrative remedies. *See, Calhoun v. DOJ*, 693 F.Supp.2d 89, 91 (D.D.C. 2010).

[11] Because Plaintiff failed to exhaust administrative remedies with respect to EOUSA and the Criminal Division, an argument on the merits of a privacy *Glomar* response is not briefed here but is equally applicable to these Defendants. The Criminal Division issued its *Glomar* response to Plaintiff as to Items 1, 2 and 4 in a transmittal email and letter dated June 4, 2021 [McCoy Declaration ¶ 7]. EOUSA issued its *Glomar* response to Plaintiff in a transmittal email and letter dated May 25, 2021 [Finney Declaration ¶ 7 & Attachment A].

Since it is the FBI's policy not to conduct a search for responsive records under *Glomar* circumstances, there is no specific statutory investigative authority for compiling the records to cite here; however, Plaintiff is seeking records on investigations, that, should any exist, would have been collected and maintained by the FBI as part of its law enforcement mission. [Seidel Declaration ¶ 12]

B.  Privacy *Glomar*

The FBI relies on a *Glomar* response in instances in which, if responsive records existed, even acknowledging their existence would result in harm protected against by one or more FOIA exemptions. To be credible and effective, the FBI must use a *Glomar* response in all similar cases regardless of whether responsive records exist, including instances in which the FBI does not possess records responsive to a particular request. If the FBI were to invoke a *Glomar* response only when it possessed responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist. [Seidel Declaration ¶13].

The FBI has determined that merely acknowledging the existence or non-existence of records responsive to Plaintiff's request would trigger harm under FOIA Exemptions (b)(6) and (b)(7)(C) with respect to the following third parties: John Roach, Sr., John Roach, Jr., Cynthia Wheless, Ray Wheless, Jonathan Stick and Jess Rickman. [Seidel Declaration ¶14].

C.  <u>FBI Policy for Processing Requests for Third Party Records</u>

The FBI's longstanding policy has been to provide an Exemption (b)(6) and

(b)(7)(C) *Glomar* response (hereinafter privacy *Glomar*),[12] neither confirming nor

denying the existence or non-existence of law enforcement records, in those instances

where an individual seeks access to information regarding a third party, unless the

requester establishes a public interest in disclosure that outweighs the third party's

privacy interests. The FBI instituted this policy to protect the privacy rights of

individuals, particularly those who appear in FBI law enforcement files. It is well-

recognized that individuals have substantial privacy interests in relation to being

associated with law enforcement investigations because any such association can

engender comment, speculation, or harassment; can be embarrassing and stigmatizing;

and can, in some circumstances, result in physical harm or threats of harm or death.

Statements by an individual alluding to or acknowledging an association with a law

---

[12] 5 U.S.C. § 552(b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Similarly, 5 U.S.C. § 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." The practice of the FBI is to assert Exemption (b)(6) in conjunction with Exemption (b)(7)(C). Although the balancing test for Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard, and the test for Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions are sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

enforcement investigation do not extinguish his privacy interests or constitute a waiver of privacy interests. [Seidel Declaration ¶15].

If a requester establishes that disclosure would serve a public interest under the FOIA, then the FBI will balance that public interest against the third party's privacy interests. This balancing is done on a case-by-case basis. The FBI will process a request for and release non-exempt law enforcement records about a third party only if it determines that the public interest outweighs the individual's privacy interests after conducting the balancing analysis. The balancing analysis in each case is necessarily fact specific. Thus, each request must be treated individually, and the FBI must retain flexibility in the way in which it handles each request. [Seidel Declaration ¶16].

Here, Plaintiff has not submitted: 1) a privacy waiver from any third party; 2) proof of death of any third party as described in the regulation at 28 C.F.R. § 16.3(a); or 3) demonstrated a significant public interest in disclosure of the material sought. [Seidel Declaration ¶17].

For purposes of Exemptions (b)(6) and (b)(7)(C), a public interest exists when disclosure of information about an individual would significantly increase the public's understanding of FBI operations and activities. The balancing interests under Exemptions (b)(6) and (b)(7)(C) also consider the privacy interests of the individuals implicated in a FOIA request. Here, Plaintiff is seeking records that, if they exist, would publicly connect these individuals to sensitive law enforcement operations of the FBI. Public disclosure could reasonably be expected to draw negative and unwanted attention to these

Defendants' MSJ                                                                                      21

individuals, could result in them receiving harassing inquiries, and otherwise stigmatize and adversely affect them. The Plaintiff failed to provide any information to articulate a public interest in disclosure under the FOIA. As such, the substantial privacy interests of these third-party individuals outweigh the non-existent public interest in disclosure. [Seidel Declaration ¶18].

In sum, Plaintiff provided neither a third-party waiver, nor proof of death for the individuals on which he requested information. Plaintiff has not articulated a significant public interest in disclosure that would outweigh the substantial privacy interests of these third parties. Therefore, in response to Plaintiff's request for information pertaining to John Roach, Sr., John Roach, Jr., Cynthia Wheless, Ray Wheless, Jonathan Stick and Jess Rickman the FBI asserted the privacy *Glomar* pursuant to FOIA Exemptions (b)(6) and (b)(&)(C).  Finally, when the FBI asserts a privacy *Glomar*, it is policy not to conduct a search for responsive records because the nature of the requested records alone prohibits acknowledgement and disclosure. [Seidel Declaration ¶19].

## **CONCLUSION**

EOUSA and the Criminal Division issued final determinations to Plaintiff's FOIA request that Plaintiff failed to appeal, constituting failure to properly exhaust administrative remedies. Items 2 and 3 of Plaintiff's request are not a proper FOIA request because they do not reasonably describe the records sought, and Plaintiff failed to respond to Defendants' requests for clarification. Finally, the FBI properly issued a privacy *Glomar* response to Plaintiff's request for law enforcement records concerning

third parties, when Plaintiff failed to provide privacy waivers, proofs of death, or

significant evidence of a public interest in the records that overrides the privacy interests

of the third parties. For all of these reasons, Defendants are entitled to summary

judgment.

Respectfully submitted,

BRIT FEATHERSTON
UNITED STATES ATTORNEY

*/s Andrea L. Parker*
ANDREA L. PARKER
Assistant United States Attorney
Texas Bar No. 00790851
550 Fannin, Suite 1250
Beaumont, Texas 77701
Tel:    (409) 839-2538
Fax:    (409) 839-2550
Email: andrea.parker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2023, a true and correct copy of the foregoing

document was filed electronically with the court and has been sent to counsel of record

via the court's electronic filing system.

*/s/ Andrea L. Parker*
ANDREA L. PARKER
Assistant United States Attorney

Defendants' MSJ                                                                                    23