# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JONATHAN RUTE, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No. 4:22-cv-168 |
| § | Judge Mazzant |
| U.S. DEPARTMENT OF JUSTICE and § | |
| FEDERAL BUREAU OF § | |
| INVESTIGATION, § | |
| § | |
| *Defendants.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. #10) as well as Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment (Dkt. #13). Having considered the Motions and the relevant pleadings, the Court finds that the Motions should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This is a Freedom of Information Act ("FOIA") case. On May 11, 2021, Plaintiff Jonathan Rute submitted FOIA requests to the Federal Bureau of Investigation ("FBI") and two sections of the United States Department of Justice ("DOJ") (collectively, the "Government")—the Executive Office for U.S. Attorneys ("EOUSA") and the Criminal Division (Dkt. #1 at ¶ 6). Through it, Rute requested the following categories of information:

1. For the period from January 1, 2010 until the present, all documents, records, or communications arising from or pertaining to any public integrity investigations of former Collin County District Attorney John Roach, Sr., District Judge John Roach, Jr., District Judge Cynthia Wheless, and/or former District Judge Ray Wheless.

2. For the period from January 1, 2014 until the present, all documents, records, or communications arising from or pertaining to any public integrity investigations of any other Collin County elected officials (e.g., county commissioner, district judge, etc.).

3. For the period from January 1, 2014 until the present, all documents, records or communications arising from or pertaining to any investigations of attorneys or law firms for engaging or attempting to engage in any illegal activities with judges in Collin County (e.g., attempting to bribe a judge or steer kickbacks to a judge).

4. For the period from January 1, 2014 until the present, all documents, records or communications arising from or pertaining to federal investigations of attorneys Jonathan D. "Jack" Stick and Jess C. "Rick" Rickman, as well as any attorneys affiliated with Hallett and Perrin, P.C.

(Dkt. #1 at p. 2).

On May 11, 2021, the Government received and started to process Rute's FOIA requests (Dkt. #10 at pp. 3–7).[1]

## I. The Request with EOUSA

On May 25, 2021, EOUSA sent Rute a letter informing him that the information he requested involved third parties (Dkt. #10 at p. 3). As such, EOUSA would not release the information unless Rute provided consent from the third parties that expressly authorized the disclosure, or he clearly demonstrated that the third parties' privacy interests would be outweighed by a significant public benefit (Dkt. #10 at p. 3; Dkt. #10-1 at pp. 7–8). EOUSA informed Rute that he could appeal the decision within ninety days (Dkt. #10-1 at pp. 7–8). But he did not (Dkt. #10 at p. 3; *see* Dkt. #13 at p. 1).

## II. The Request with Criminal Division

On June 4, 2021, the Criminal Division informed Rute that his FOIA request would be divided into two files (Dkt. #10 at p. 4). The first file ("File One"), numbered CRM-301649383,

---

[1] Defendants represent that Rute did not submit a privacy waiver from any third party, proof of death of any third party as described in regulation 28 C.F.R. § 16.3(a), or demonstrate a significant public interest in disclosure of the materials he seeks (Dkt. #10 at p. 21; Dkt. #10-3 at ¶ 17).

related to Categories 1, 2, and 4 (Dkt. #10 at p. 4). The second file ("File Two"), numbered CRM-301652938, involved Category 3 (Dkt. #10 at p. 4).

### A.     File One (Categories 1, 2 & 4)

On the same day that it divided Rute's request into two files, the Criminal Division informed Rute that it would neither confirm nor deny the existence of responsive records pursuant to FOIA Exemptions 6 and 7(C) (Dkt. #10-2 at pp. 4, 12). The Criminal Division advised Rute that he had ninety days to file an administrative appeal with the Office of Information Policy ("OIP") (Dkt. #10-2 at p. 13). Again, Rute did not appeal (*See* Dkt. #10 at p. 6; *see* Dkt. #13 at p. 1).

### B.     File Two (Category 3)

Also on June 4, 2021, the Criminal Division informed Rute, by letter, that his request in Category 3 was not made in accordance with department regulations, did not describe the records sought, and did not describe in sufficient detail the information he sought to enable the Criminal Division, exercising a reasonable amount of effort, to locate the information (Dkt. #10-2 at p. 16). The Criminal division informed him he had thirty days to provide a more specific description of the information he sought (Dkt. #10-2 at p. 16). Rute, however, did not respond to the letter within the allotted time, so the Criminal Division administratively closed File Two (Dkt. #10-2 at p. 5).

### III.   The Request with the FBI

On May 19, 2021, the FBI informed Rute, by letter, that it received his FOIA request (Dkt. #10-3 at p. 21). In this letter, the FBI also told Rute that the requested information involved one or more third parties (Dkt. #10 at p. 6). As such, the FBI would neither confirm nor deny the existence of such records pursuant to FOIA Exemptions 6 and 7(C) (*See* Dkt. #10-3 at p. 21). 5 U.S.C. §§ 552(b)(6), (b)(7)(C). Unsatisfied, Rute appealed the decision to OIP, which acknowledged

receipt of his appeal on June 3, 2021 (*See* Dkt. #10-3 at p. 27). On September 16, 2021, OIP notified Rute that it affirmed the FBI's decision (Dkt. #10-3 at p. 29).

### IV.    The Lawsuit

On March 2, 2022, Rute filed suit (Dkt. #1) and the Government answered on April 20, 2022 (Dkt. #4). Then, on February 15, 2023, the Government filed this Motion (Dkt. #10). Rute filed his Response and Cross-Motion for Summary Judgment on March 22, 2023 (Dkt. #13) and the Government filed its Reply on April 28, 2023 (Dkt. #14). Rute, with leave of Court, filed a Sur-Reply on March 26, 2025 (Dkt. #21).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In general, summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). However, this standard is modified in the FOIA context.

In order to recover on a claim for violation of FOIA, the plaintiff must show "that an agency has (1) improperly (2) withheld (3) agency records." *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). Thus, "the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released." *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Cooper Cameron v. U.S. Dep't of Lab., OSHA*, 280 F.3d 539, 543 (5th Cir. 2002)). The agency is entitled to summary judgment if "the agency proves that it has fully discharged its obligations under FOIA, and there is no genuine issue of material fact, after the underlying facts and the inferences to be drawn from them are

construed in the light most favorable to the FOIA requester." *Gahagan v. U.S.C.I.S.*, 147 F. Supp. 3d 613, 620 (E.D. La. 2015) (citing *Weisberg v. D.O.J.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

When an agency asserts that documents or portions of documents are exempt from disclosure under a FOIA exemption, the court conducts a de novo review to ascertain whether the claimed exemption applies. 5 U.S.C. § 552(a)(4)(B); *Cooper Cameron Corp.*, 280 F.3d at 543. The agency has the burden of proving that withheld documents are properly exempt from disclosure and may satisfy this burden through the submission of affidavits or declarations. *Highland Cap. Mgmt., LP v. I.R.S.*, 408 F. Supp. 3d 789, 801 (N.D. Tex. 2019); *Gahagan*, 147 F. Supp. 3d at 620. The affidavits must be clear, specific, and reasonably detailed while describing the withheld information in a factual and nonconclusory manner. *Cooper Cameron Corp.*, 280 F.3d at 543. Thus, "because the burden to establish an exemption remains with the agency, the district court should not grant summary judgment based on a conclusory and generalized assertion, even if the FOIA requester has not controverted that assertion." *Batton*, 598 F.3d at 175 (citation modified). Accordingly, "a court generally will grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under exemptions." *Id.* (citation modified).

In analyzing affidavits and declarations submitted by an agency, the agency's affidavits are entitled to a "presumption of legitimacy." *Negley v. F.B.I.*, 589 F. App'x 726, 730 (5th Cir. 2014); *see also U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991). A plaintiff can overcome this presumption through contradictory evidence or by showing that the agency acted in bad faith in handling the plaintiff's FOIA request. *Negley*, 598 F. App'x at 730; *Highland*, 408 F. Supp. 3d at 801. However, this presumption of legitimacy "does not relieve the withholding agency of its burden of proving

that the factual information sought falls within the statutory exemption asserted." *Batton*, 598 F.3d at 176 (citing *Stephenson v. I.R.S.*, 629 F.2d 1140, 1145 (5th Cir. 1980)).

Furthermore, while an agency's affidavits are entitled to a presumption of good faith, "that does not mean that the agency is entitled to a presumption that its search was adequate." *Negley*, 598 F. App'x at 730 (emphasis added). Good faith in responding to a FOIA request, as compared to conducting an adequate search in response to that request, are related, but separate issues. *Id.* at n.7 (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) ("[O]nce the agency has shown by convincing evidence that its search was reasonable, ... then the burden is on the requester to rebut that evidence by a showing that the search was not in fact in good faith. Summary judgment would be improper if the adequacy of the agency's search were materially disputed on the record."). So, while a plaintiff can overcome the presumption of legitimacy accorded to an agency's affidavits through a showing of bad faith, "he can defeat summary judgment on the adequacy of the search by presenting evidence that the affidavits do not describe an adequate search." *Id.* (finding that any contrary rule would "impose too high a burden on the plaintiff" and would contravene the summary judgment standard). Thus, in addition to a showing of bad faith, "the plaintiff can prevent summary judgment by introducing evidence that creates a genuine dispute as to the adequacy of the search." *Id.*

## ANALYSIS

### I.     The Claims Against DOJ—The Criminal Division and EOUSA

The Criminal Division and EOUSA are entitled to summary judgment on the claims against them. In fact, Rute explicitly states that he "challenges only those portions of the [Motion for Summary Judgment] pertaining to the [FBI]" (Dkt. #13 at p. 1). The Court finds that the Criminal Division and EOUSA's summary judgment evidence establishes that Rute did not exhaust his

administrative remedies before filing this lawsuit (Dkt. #10 at pp. 3, 5; Dkt. #10-2 at pp. 4–5; Dkt. #10-1 at ¶ 8; *see* Dkt. #13 at p. 1). *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979) ("We conclude that [] FOIA should be read to require that a party must present proof of exhaustion of administrative remedies prior to seeking judicial review."); *see also Voinche v. F.B.I.*, 999 F.2d 962, 963 (5th Cir. 1993) (same); *Calhoun v. F.B.I.*, 546 F. App'x 487, 490 (5th Cir. 2013) (same). Thus, the Court finds the Criminal Division and EOUSA are entitled to summary judgment on the claims against them and these claims are dismissed with prejudice.

## II. The Claims Against the FBI

The FBI is entitled to summary judgment on Rute's claims involving Categories 1 and 4; thus, the Court dismisses those claims with prejudice. Rute, however, is entitled to summary judgment on his claims regarding Categories 2 and 3. Accordingly, the Court will require the FBI to conduct additional searches as described below.

### A. Rute's Request for Categories 1 and 4

#### 1. Exemptions 6 and 7(C) Generally

FOIA Exemption 6 allows agencies to exempt from disclosure information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Pursuant to [E]xemption 6, an agency may delete personal details within a document, provided the details to be deleted are reasonably severable and the overall privacy interests of the individual clearly outweigh the presumption of public disclosure." *Sherman v. U.S. Dep't of Army*, 244 F.3d 357, 361 (5th Cir. 2001) (citing *Avondale Indus., Inc. v. N.L.R.B.*, 90 F.3d 955, 958 (5th Cir. 1966)). Similarly, Exemption 7(C) permits an agency to withhold records compiled for law enforcement purposes if production

7

of the records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § (b)(7)(C).

"Privacy interest" in this context is broadly defined to "encompass [an] individual's control of information concerning his or her person." *Sherman*, 244 F.3d at 362 (quoting *U.S. Dep't of Defense v. Fed. Labor Rels. Auth.*, 510 U.S. 487, 500 (1994)). On the other hand, "public interest" is defined narrowly to consider only "the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to the public understanding of the operations or activities of the government." *Id*. Moreover, in considering the public's interest, the purpose for which the request for information was made is irrelevant. *Id*. at 362. Rather, "the court must consider only whether the requested information sheds light on agency action." *Id*.

In the Fifth Circuit, courts apply a three-part test to determine if these exemptions apply. *See Halloran v. Veterans Admin.*, 874 F.2d 315, 319 (5th Cir. 1989). "The first step is to identify and evaluate the specific privacy interests implicated by the information encompassed by the disclosure request." *Id*. The second step "is to identify and evaluate the particular public interest that may be served—or disserved—by disclosure of the information." *Id*. After the court examines each of these interests, the court moves on to the third step where it "perform[s] the actual weighing of the interests for and against disclosure." *Id*. Based on this test, whether disclosure is warranted "depends not on the particular purpose for which the document is requested, but on the nature of the document requested and its relationship to the basic purpose of the FOIA to open agency action to the light of public scrutiny." *Driggers v. United States*, No. 3:11-CV-229, 2011 WL 5525337, at *6 (N.D. Tex. Oct. 26, 2011) (citing *Batton*, 598 F.3d at 180).

The Fifth Circuit has compared the balancing tests contained in Exemptions 6 and 7(C) and has recognized two differences. *See Halloran*, 874 F.2d at 319. First, Exemption 6 applies to disclosures that "would constitute an invasion of privacy," whereas Exemption 7(C) applies to disclosures that "could reasonably be expected to constitute" an invasion of privacy. *Id*. Second, Exemption 6 requires that an invasion of privacy be "clearly unwarranted" before nondisclosure is appropriate, whereas Exemption 7(C) requires only that the invasion of privacy be "unwarranted." *Id*. Based on these differences, the Fifth Circuit has concluded that Congress intended for the standard for evaluating a threatened invasion of privacy under Exemption 7(C) to be broader than that used for Exemption 6. *Id.*; *see also A.C.L.U. v. D.O.J.*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material."). That said, "[d]espite the differences between Exemptions 6 and 7(C), the privacy inquiry for each is essentially the same, with the difference being the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." *Walsh v. FBI*, 952 F. Supp. 2d 71, 89 (D.D.C. 2013) (internal quotations omitted).

### 2. Exemptions 7(C)'s Interaction with Categories 1 and 4

The FBI properly withheld information pursuant to Exemption 7(C). As noted above, Rute requested the following:

1. For the period from January 1, 2010 until the present, all documents, records or communications arising from or pertaining to any public integrity investigations of former Collin County District Attorney John Roach, Sr., District Judge John Roach, Jr., District Judge Cynthia Wheless, and/or former District Judge Ray Wheless.

4. For the period from January 1, 2014 until the present, all documents, records or communications arising from or pertaining to federal investigations of attorneys Jonathan D. "Jack" Stick and Jess C. "Rick" Rickman, as well as any attorneys affiliated with Hallett and Perrin, P.C.

(Dkt. #1-1 at p. 2).

Rute argues that the "FBI improperly invoked *Glomar* and improperly relied on privacy exemptions" (Dkt. #13 at p. 5). He argues that the public has an interest in these matters that overcomes the privacy concerns of the named individuals (*See* Dkt. #13 at p. 6). The FBI disagrees. It argues that it properly invoked *Glomar* because "individuals have substantial privacy interest in relation to being associated with law enforcement investigations" since such an association can "engender comment, speculation, or harassment; can be embarrassing and stigmatizing," and, in some circumstances, result in physical harm or threats of death (Dkt. #10 at p. 20). With these arguments in mind, the Court will conduct the three-part test to determine if Exemption 7(C) applies. *See Halloran*, 874 F.2d at 319.

        a.        The Privacy Interests

"The first step is to identify and evaluate the specific privacy interests implicated by the information encompassed by the disclosure request." *Id.* Here, Rute believes that the individuals named in Categories 1 and 4 (the "Named Individuals") are subjects of FBI investigations (Dkt. #1-1 at p. 2). The Fifth Circuit has stated that "[t]here can be no clearer example of an unwarranted invasion of privacy than to release to the public that another individual was the subject of a criminal investigation." *Halloran*, 874 F.2d at 320 (citation modified). Accordingly, the Court finds that the Named Individuals have a recognizable privacy interest. The Court must next assess the public interest.

        b.        The Public Interests

The second step "is to identify and evaluate the particular public interest that may be served—or disserved—by disclosure of the information." *Halloran*, 874 F.2d at 319. Rute, as the FOIA requester, has the burden to "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and "show

the information is likely to advance that interest." *Boyd v. Crim. Div. of D.O.J.*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citation modified). In fact, the "only relevant public interest in the FOIA balancing analysis under [*Nat'l Archives & Recs. Admin. v. Favish*, 514 U.S. 157, 172 (2004)] is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Rahim v. FBI*, 947 F. Supp. 2d 631, 643 (E.D. La. 2013) (citation modified). Rute argues that the information should be disclosed because the public interest outweighs the privacy interests of the Named Individuals. He argues that disclosure serves the public interest for two reasons, (1) privacy interests are diminished where matters of public corruption are concerned and (2) the public's interest in assessing the FBI's effectiveness at investigating public corruption (*See* Dkt. #13 at pp. 5–6).[2] As to his first argument, Rute is correct that public corruption is a significant public interest. But, unlike he avers, it is not that privacy interests are diminished where matters of public corruption are concerned. Rather, the public interest may be stronger in suits regarding public corruption and require a more careful balancing between the asserted privacy interest. *Cf. Citizens for Resp. & Ethics in Wash. v. U.S.P.S.*, 557 F. Supp. 3d 145, 158 (D.D.C. 2021) (noting that the public has a strong interest in disclosure of conflicts of interest). Rute establishes that information on the Named Individuals is a public interest because of society's concern for public corruption. Further, records of the investigation into these Named Individuals, if they exist, would "likely advance that interest." *Boyd*, 475 F.3d at 387. Accordingly, the Court will consider Rute's allegations of public corruption as a significant public interest to be weighed against the privacy interests of the Named

---

[2] Rute alleges that Judge Roach ignored evidence that Mr. Alfred and Mr. Stick perpetrated a fraud on his court (Dkt. #13 at p. 6).

11

Individuals. Rute's second argument is that the public has an interest in knowing the Dallas Field Office's effectiveness at conducting investigations regarding public corruption. The Court agrees that this is a significant public interest. "The FBI is responsible for detecting and undertaking investigations into possible violations of Federal criminal laws." *Rahim*, 947 F. Supp. 2d at 642 n.35 (citing 28 U.S.C. § 533). Given this responsibility, the FBI's ability to root out Federal crimes is a significant public interest and records into investigations are somewhat likely to advance this public interest. Thus, the Court will also consider the FBI's effectiveness at investigating public corruption as a public interest. The Court will now balance the private and public interests against each other.

### c. Weighing the Private and Public Interests

The public interest in the information's disclosure does not outweigh the privacy interests. The Fifth Circuit has noted that there "can be no clearer example of an unwarranted invasion of privacy than to release to the public that another individual was the subject of a criminal investigation." *Halloran*, 874 F.2d at 320 (citation modified); *see also Martin v. D.O.J.*, 488 F.3d 446, 457 (D.C. Cir. 2007) ("[P]rivacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated."). Rute seeks information on whether the Named Individuals are implicated in an FBI investigation because, according to him, disclosure serves the public's interest in rooting out public corruption and the FBI's effectiveness at investigating such corruption (*See* Dkt. #13 at pp. 2–6). In doing so, he provides the following: (1) his own declaration, attaching a letter and motion in Texas State Court by Kelly M. Liebbe ("Liebbe"); (2) a list of Collin County officials; and (3) two news articles (Dkt. #13-1; Dkt. #13-3;

12

Dkt. #13-4; Dkt. #13-5).[3] Before balancing the interests, the Court must first determine whether Rute's news articles are proper summary judgment evidence. They are not. As the Court ruled in another FOIA case, a "FOIA plaintiff cannot rely on inadmissible evidence to establish facts relevant to a motion for summary judgment." *Huddleston v. F.B.I.*, 2024 WL 3834383, at *3 (E.D. Tex. Aug. 15, 2024); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) ("The plaintiffs provide only newspaper articles—classic, inadmissible hearsay."). Accordingly, the Court will not consider Rute's news articles as summary judgment evidence.

When viewing this evidence in the light most favorable to Rute, the privacy interests at stake carry the day. *Gahagan v. U.S.C.I.S.*, 147 F. Supp. 3d 613, 620 (E.D. La. 2015) (citing *Weisberg v. D.O.J.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). First, Rute's remaining evidence is unpersuasive. As an initial matter, the list of Collin County officials that the FBI investigated carry almost no weight. That is because it does not demonstrate how disclosure of information overcomes the Named Individuals' privacy interests. *Martin*, 488 F.3d at 457. Rute's remaining evidence is also unavailing. His declaration, though sworn, merely contains allegations that the FBI was investigating judges, attorneys, and a physician in Collin County, Texas (Dkt. #13-1 at pp. 2–4). Rute notes that the FBI closed the investigation into the physician, but he is unsure whether the FBI closed the investigation on the judges and attorneys (Dkt. #13-1 at p. 4). Further, the evidence relating to Liebbe is equally unpersuasive. This evidence includes an unsworn letter, a motion in state court, and an email attachment to the motion referencing these investigations as well as

---

[3] Rute also submits a declaration by the FBI's Chief of Record/Information Dissemination Section in the Information Management Division that was filed in a separate case before the Court (Dkt. #13-2). This evidence, however, is used to support Rute's argument that the FBI's search was insufficient because it did not reach out to its Dallas Field Office when searching for responsive documents (Dkt. #13 at pp. 3–4). So, the Court considers that piece of evidence when evaluating the sufficiency of the FBI's search, *not* when weighing the public and privacy interests.

Liebbe's involvement with them as an FBI informant (Dkt. #13-1 at pp. 6–10). These pieces of evidence are insufficient to support Rute's allegations that "the FBI engaged in any sort of impropriety." *Rahim*, 947 F. Supp. 2d at 645. Rute's main qualm is that the FBI has, supposedly, conducted investigations lasting years that have led to no prosecutions. According to Rute, this indicates that the FBI is ineffective at investigating public corruption (*See* Dkt. #13 at pp. 2–5). Rute's "mere allegations fail to satisfy his burden to overcome" the Named Individuals' privacy interests. *Rahim*, 947 F. Supp. 2d at 645 (citing *Pugh v. F.B.I.*, 793 F. Supp. 2d 226, 232 (D.D.C. 2011) ("A requester might overcome an individual's privacy interest if . . . he offers compelling evidence that the agency denying the FOIA request is engaged in illegal activity.")). Rute's evidence falls far short from demonstrating that the FBI is engaged in illegal activity or is ineffective at investigating public corruption. *Pugh*, 793 F. Supp. 2d at 232. Instead, the Court is persuaded by the Government argument that if the information exists and it were disclosed the information would likely lead to harassing inquiries, stigmatize the Named Individuals, and adversely affect them (*See* Dkt. #10 at pp. 21–22; Dkt. #10-3 at p. 8). These are the concerns Congress had in mind when it drafted Exemption 7(C) and the Fifth Circuit has recognized in its FOIA jurisprudence. *See Halloran*, 874 F.2d at 318–19. After weighing the public and private interests, the Court concludes that disclosure of this information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* (citing 5 U.S.C. § 552(b)(7)(C). The magnitude of the public interests Rute identified does not overcome the Named Individuals' privacy interests. Accordingly, the FBI properly issued a *Glomar* response to Rute's request for information in Categories 1 and 4. Therefore, the FBI is entitled to summary judgment on these claims and the Court dismisses Rute's claims involving Categories 1 and 4 with prejudice.

### B.     Categories 2 and 3

#### 1.     The FBI's Obligation Under FOIA

Under FOIA, an agency must perform "a search reasonably calculated to yield responsive documents." *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010). The agency can satisfy this requirement with affidavits that provide a detailed description of the search methods. *Negley*, 598 F. App'x at 729. While an agency's affidavits are entitled to a presumption of good faith, "that does not mean that the agency is entitled to a presumption that its search was adequate." *Id.* at 730. Good faith in responding to a FOIA request, as compared to conducting an adequate search in response to that request, are related, but separate issues. *Id.* A plaintiff can overcome the presumption of legitimacy accorded to an agency's affidavits through a showing of bad faith or by introducing evidence that creates a genuine dispute as to the adequacy of the search. *Id.* at 730.

#### 2.     The Adequacy of the FBI's Search

The Court finds that the FBI's search was inadequate. As a reminder, Rute requested the following information from the FBI:

2. For the period from January 1, 2014 until the present, all documents, records, or communications arising from or pertaining to any public integrity investigations of any other Collin County elected officials (e.g., county commissioner, district judge, etc.).
3. For the period from January 1, 2014 until the present, all documents, records or communications arising from or pertaining to any investigations of attorneys or law firms for engaging or attempting to engage in any illegal activities with judges in Collin County (e.g., attempting to bribe a judge or steer kickbacks to a judge).

(Dkt. #1 at p. 2).

The FBI argues that Rute's request is improper for two reasons, (1) because the records sought are not reasonably described, and (2) to find responsive records, the FBI would be required to conduct unduly burdensome searches (*See* Dkt. #13 at pp. 10–18). More specifically, the FBI

argues the records sought in Categories 2 and 3 are not reasonably described because they seek information pertaining to public integrity investigations of Collin County officials, lawyers, and law firms for a 7-year period (*See* Dkt. #10 at pp. 10–13). The FBI claims that its Central Record System ("CRS") is not equipped to process such a broadly phrased request (*See* Dkt. #10 at pp. 10–13).[4] Relatedly, the FBI argues that the searches would be unduly burdensome and require it to draw conclusions, due to Rute's lack of specificity (Dkt. #10 at p. 13). The FBI states that when it conducted a search for responsive records it input the term "public integrity" into its Central Records System ("CRS") (Dkt. #10 at p. 14). According to the FBI, the CRS produced approximately 800,000 hits and evaluating these results is unduly burdensome as well as impractical (Dkt. #10 at p. 14). Rute disagrees. He argues that the FBI could have input the term "public integrity" in conjunction with the term "Collin County" which would likely have narrowed the results (Dkt. #13 at p. 3). Alternatively, Rute argues that the FBI should have reached out, like it did in *Huddleston v. FBI*, to field offices and individual agents likely to know about responsive records (Dkt. #13 at p. 3). 2022 WL 4593084, at *10 (E.D. Tex. Sept. 29, 2022). Rute's argument carries the day. As the FBI notes, "an agency need not deploy every conceivable search term or permit the FOIA requester to dictate the search terms in the course of litigation, but it must use terms reasonably calculated to locate responsive records" (Dkt. #14 at p. 2 (citing *SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 241 (D.D.C. 2018))). The FBI did not do that here because it merely used the term "public integrity" (*See* Dkt. #10 at p. 14). Rather, as Rute recommends, the FBI should have input "public integrity" in conjunction with "Collin County" to narrow the

---

[4] The FBI has an intricate system for maintaining record, which the Court has more fully described in another case. *See Huddleston v. FBI*, No. 20-CV-447, 2022 WL 4593084 (E.D. Tex. Sept. 29, 2022).

search results to investigations occurring in Collin County (Dkt. #13 at p. 3). This search is not unduly burdensome and likely would have resulted in responsive records. Alternatively, the FBI could have merely contacted the field office in the area to determine if any records existed, like it did in *Huddleston v. FBI*. 2022 WL 4593084, at *10 (E.D. Tex. Sept. 29, 2022). Accordingly, the Court finds that Rute is entitled to summary judgment on his claims regarding Categories 2 and 3 in that the FBI must conduct an adequate search.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #10) is hereby **GRANTED in part** and **DENIED in part**.

It is **ORDERED** that Rute's claims against the DOJ—Criminal Division and EOUSA—are **DISMISSED with prejudice**.

It is further **ORDERED** Rute's claims against the FBI regarding Categories 1 and 4 are **DISMISSED with prejudice**.

It is further **ORDERED** that Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment (Dkt. #13) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that the FBI must conduct a search of the CRS with the input "public integrity" in conjunction with "Collin County." Additionally, the FBI must contact its Dallas Field Office to determine if any agent is aware of records responsive to Rute's request. The FBI must complete these actions within 14 days of the issuance of this Memorandum Opinion and Order. Further, once the FBI completes this search, provided there are responsive documents, the FBI may still assert that the documents cannot be released due to exemptions under FOIA.

**IT IS SO ORDERED.**

**SIGNED this 4th day of August, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE